UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREEN EMPIRE FARMS, INC.,

                Plaintiff,                    Case No. 2:23-cv-10737

v.                                   Honorable Susan K. DeClercq
                                   United States District Judge

PLANT PRODUCTS USA, INC.,

                Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO QUASH RULE 34(a)(2) ONSITE INSPECTION (ECF No. 28)

Green Empire Farms brings this action against Plant Products USA for damages to its tomato crops allegedly caused by the use of SaniDate, a non-party product that clogged its irrigation lines. Green Empire alleges that Plant Products, as an "expert resource and consultant with specialized expertise and knowledge," ECF No. 1 at PageID.3, induced Green Empire to purchase and use SaniDate, despite knowing that it would likely clog its irrigation system and lead to crop loss. *Id*. at PageID.8–9.

To support its claims, Green Empire issued a notice to Plant Products that it intended to conduct an onsite inspection of Plant Products' computer-based content-management system (CMS) under Civil Rule 34(a)(2). Plant Products objected to the inspection and moved to quash. ECF No. 28.

On September 5, 2024, the Court held an in-person hearing on Plant Products' motion. ECF No. 28. For the reasons explained below, the motion will be denied.

## I. BACKGROUND

In March 2020, Plant Products sold a product called SaniDate to Green Empire. Green Empire then injected SaniDate into its drip irrigation system, which inadvertently caused a biofilm to grow and clog the system, ultimately destroying its tomato crops. The Parties dispute whether the Plant Products employee who sold SaniDate to Green Empire, Andrew Eye, warned Green Empire of the risks of injecting the product into the irrigation system.

Central to this question is Plant Products' computer-based content-management system (CMS). The CMS serves as a form of recordkeeping, allowing salespeople like Eye to record their client interactions contemporaneously. ECF No. 28-1 at PageID.236–37. For instance, employees often use the CMS to summarize when and why there was a client call, email, or visit. *See id.* They "try to record as much as [they] can" into the CMS, especially since making a certain number of entries can qualify them for a bonus. *Id.* at PageID.236, 241.

As related to this case, Green Empire served a discovery request to Plant Products on May 19, 2023, seeking "all documents and ESI" related to, among other things, the sale of SaniDate, communication between the Parties about SaniDate, communication with BioSafe (the manufacturer of SaniDate), and internal

communication within Plant Products relating to the subject of the litigation. ECF No. 31 at PageID.341–42. Plant Products' response did not include any CMS entries, nor did it produce any metadata. *Id*. at PageID.342.

However, the day before the scheduled deposition of Andrew Eye, Plant Products produced a screenshot of one CMS entry dated March 31, 2020, purportedly memorializing a conversation in which Eye warned Green Empire about the risks of injection. *Id.* In that entry, Eye stated: "Lars [i.e., Green Empire's grower] wants to inject Sanidate 12 in their water for the tomatote [sic] range, i cautioned him against clogging drippers but since everything is new he is not concerned." *Id.* at PageID.342–43. While Plant Products points to this CMS entry as evidence that it did provide a warning, Green Empire denies that the conversation ever happened. ECF No. 31-5 at PageID.448.

Further, at his deposition, Eye testified that he had made *multiple* CMS entries regarding his work managing Plant Products' relationship with Green Empire, not just the one. ECF No. 28-1 at PageID.238–29. But Green Empire says that Plant Products has not yet produced them. ECF No. 39 at PageID.559.

On February 9, 2024, Green Empire issued a second discovery request for "all documents and ESI" relating to business dealing between the Parties, and specifically named Plant Products' "CMS Reporting" system. ECF No. 31 at PageID.346. It also requested an onsite inspection of the CMS system under Civil

Rule 34(a)(2). *Id*. Green Empire later agreed to withdraw the inspection request based on Plant Products' agreement to search for and produce responsive documents and ESI. *Id*.

On May 2, 2024, in response to Green Empire's second discovery request, Plant Products provided a second one-page screenshot of a CMS entry, but it did not produce the native file, nor any metadata. *Id.* at PageID.347. It also did not include any other CMS entries authored by Eye. *Id*. According to Green Empire, "no other screen shots of CMS entries have been produced, nor have any actual CMS and/or native .rtf files been produced, let alone any metadata." *Id*.

Moreover, as part of its response to the second discovery request, Plant Products disclosed that the CMS entry dated March 31, 2020, had actually been made on April 3, 2020, and that Plant Products' President had later altered the CMS entry by deleting its last sentence, which apparently had read: "should help increase sanidate sales." ECF No. 31-1 at PageID.386. Green Empire argues that this deletion casts doubt on the President's deposition testimony that Plant Products was not actively marketing the product to disinfect irrigation lines. ECF No. 39-3 at PageID.558–59.

As a result, Green Empire now seeks an onsite inspection of Plant Products' ESI systems under Civil Rule 34. Specifically, Green Empire requests:

- CMS entries with Green Empire Farms, Inc. listed in the "Customer" field, and/or Green Empire Farms, Inc.'s unique identifier listed

anywhere in the records, from September 1, 2019 to August 31, 2020, and all related metadata showing subsequent edits, deletions, etc. which may go beyond August 31, 2020, as well as the dates and authors of those edits, deletions, etc.;

- CMS entries from the inception of the CMS System (including but not limited to enterprise type system Syspro7 and/or Syspro8) to the present which include any of the following terms[2] in the "Comments" field:

  1. SaniDate
  2. Peracetic
  3. Peroxyacetic
  4. PAA
  5. CH3CO3H

and all metadata related to those entries and any subsequent edits and/or deletions of such entries, including but not limited to the dates and authors of those edits and/or deletions; and

- CMS entries from the inception of the CMS System (including but not limited to Syspro 7 and/or Syspro 8) to the present which list Andrew Eye in the "SalesRepName" field, and/or Andrew Eye's unique identifier listed anywhere in the records, and which include any of the following terms in the "Comments" field:

  6. Green Empire
  7. GEF
  8. Lars
  9. Gert
  10. Hydrogen peroxide
  11. H2O2
  12. BioSafe

and all metadata related to those entries and any subsequent edits and/or deletions of such entries, including but not limited to the dates and authors of those edits and/or deletions.

ECF No. 39 at PageID.554–55.[1]

## II. STANDARD OF REVIEW

The Civil Rules allow for broad discovery in litigation, including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). District courts also retain broad discretion to determine the proper scope of discovery. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). Even so, courts must limit the extent discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i).

During discovery, it is not uncommon to compel the forensic imagining and production of an opposing party's computer systems. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (collecting cases). Even so, courts "have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." *Id.* at 459–60 (quoting *Balboa Threadworks, Inc. v. Stucky*, No. 05–1157, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006)).

---

[1] Green Empire notes that, despite limiting the information it seeks via the Rule 34 inspection, it "is not withdrawing any of its earlier interrogatories or requests for production." ECF No. 39 at PageID.554 n.1.

Courts have also been wary to grant "drastic electronic discovery measures" based only upon "mere skepticism that an opposing party has not produced all the relevant information." *Id.* at 460 (citing *McCurdy Grp., LLC v. Am. Biomed. Grp.*, 9 Fed. App'x 822, 831 (10th Cir. 2001)); *see also FCA US LLC v. Bullock*, 329 F.R.D. 563, 567 (E.D. Mich. 2019) (collecting cases). Still, "[c]ourts have recognized that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." *Hawkins v. Ctr. for Spinal Surgery*, No. 3:12-1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015).

### III. ANALYSIS

The onsite inspection will be permitted because the discovery sought is relevant and proportional to the needs of the case.

*Relevance*. The information Green Empire seeks is relevant because it would help answer whether Plant Products concealed or failed to warn about the fact that SaniDate could cause irrigation drippers to clog—the central issue in this case. Having the ability to review the metadata of the March 31 CMS entry itself, rather than just a screenshot of it, would help Green Empire determine the entry's authenticity.

Although it is true "mere skepticism" alone regarding authenticity does not justify an inspection, here Green Empire has more. Namely, it has the fact that Plant

- 7 -

Products' President altered the March 31 entry. Although Plant Products argues that "the edit had nothing to do with the issue regarding the warning," ECF No. 41 at PageID.608, it is understandable why Green Empire would be hesitant to take Plant Products at its word, especially when that fact was seemingly not disclosed up front. This is the type of potential "discrepancy or inconsistency" that may justify a computer-system inspection. *See Hawkins*, 2015 WL 3795297, at *1. Also, as Green Empire notes, the discrepancy may call into question the credibility of the President's deposition testimony, which is also relevant. ECF No. 39 at PageID.558.

Green Empire's position also finds support in Eye's testimony that he made multiple other CMS entries regarding the Parties' relationship—not just the March 31 one. ECF No. 28-1 at PageID.238. Although Plant Products argues that only the March 31 note is relevant, what those other CMS entries say (if any exist) may turn out to be relevant to Green Empire's claims.

At bottom, CMS entries related to Green Empire or SaniDate, made on March 31 or otherwise, are relevant to this case. If information exists in the CMS as to, for example, when these entries were originally created, when and how many times they were edited, the nature of any edits, the identity of the author of the original entries, and the author or authors of the edits, then Green Empire is entitled to it. This is true especially because Plant Products has not yet produced any native files, and there is no indication that this information is available from any other source besides the

native CMS entries, or that it would be duplicative or cumulative of what has already been produced. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

*Proportionality.* Plant Products maintains that an onsite inspection would be unduly burdensome, given the significant cost of hiring and paying IT experts to participate in the process. ECF Nos. 28 at PageID.225; 37 at PageID.525–26. It estimates that each party may need to spend upwards of $100,000 to review the collected information. ECF No. 37 at PageID.526. Green Empire responds that this number is inflated because it accounts for time to be spent reviewing emails—which Green Empire does not seek. ECF No. 39 at PageID.556. Rather, Green Empire seeks only CMS entries, and its expert anticipates being able to conduct the inspection in one day for around only $7,000.[2] ECF No. 39 at PageID.556–57. Further, Green Empire points out that it—not Plant Products—would bear the majority of the inspection's cost, *id.* at PageID.557, and that it has already "significantly narrowed the scope" of its planned inspection, *id.* at PageID.561.

Given that the scope of what Green Empire seeks is now more limited, the cost of the inspection is probably not as high as Plant Products claims. But the Court suspects that the cost may not be as low as Green Empire says, either; as Plant Products notes, it would still have to pay for its own expert and attorney review

---

[2] The $7,000 estimate accounts for time that would be spent reviewing the collected data.

during the process. ECF No. 41 at PageID.607. It is also unhelpful that neither party has even attempted to estimate how much information they expect to have to collect and review during the inspection. Even so, given Green Empire's representations that damages may be upwards of $1.5 million, and that it will bear the majority of the inspection's cost, the Court finds it to be proportional to the needs of the case.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1.  Defendant's Motion to Quash Rule 34(a)(2) Onsite Inspection, ECF No. 28, is **DENIED**.

2.  Before the inspection takes place, the Parties are **DIRECTED** to have their relevant experts meet and confer to develop the procedures by which the inspection will take place.

**This is not a final order and does not close the above-captioned case**.

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: 9/17/2024